# In the United States Court of Federal Claims

No. 14-123T
(Filed: December 17, 2015)

```
*************************************
MICHAEL DON GREENE,                  *
                                     *    Pro Se Plaintiff; Summary Judgment;
              Plaintiff,             *    RCFC 56; 31 U.S.C. § 3720A;
                                     *    Motion to Compel; Motion to Stay;
       v.                            *    Illegal Exaction; Offset; Notice;
                                     *    Criminal Fine; Debt; Past Due;
THE UNITED STATES,                   *    Certification
                                     *
              Defendant.             *
*************************************
```

Michael D. Greene, Sedona, AZ, pro se.

Jennifer D. Auchterlonie, United States Department of Justice, Washington, DC, for defendant.

## OPINION AND ORDER

**SWEENEY**, Judge

Before the court are the parties' cross-motions for summary judgment pursuant to Rule 56 of the Rules of the United States Court of Federal Claims ("RCFC"). In addition, plaintiff, proceeding pro se, moves to stay proceedings and to compel discovery. Plaintiff argues that when defendant offset his federal income tax overpayment for the 1995 tax year against a criminal fine owed to defendant, defendant illegally exacted the overpayment by violating procedural requirements under 31 U.S.C. § 3720A. For the reasons set forth below, defendant's motion is granted, and plaintiff's motions are denied.

## I. BACKGROUND

Plaintiff and his wife, Sandy Greene, filed a joint income tax return for the 1990 tax year reflecting a tax liability of $8,870 and withholding of $9,803.76. Subsequently, they received a refund of $933.76. The income taxes reflected on their joint tax return were assessed to a Joint Master File ("JMF") account. In 1992, the Internal Revenue Service ("IRS") began an audit of the Greenes for the 1990 tax year. Subsequently, the IRS's examination work papers reflected unreported income of $888,496.75. The IRS issued to the Greenes a Notice of Deficiency proposing additional assessments. Specifically, the IRS assessed against them, jointly: $110,623 in taxes; an accuracy penalty of $1,646 pursuant to 26 U.S.C. § 6662(a); and $90,244.72 in interest. These joint assessments were made to the JMF account. It was later determined that Mrs. Greene was not liable for the entire tax liability resulting from the 1990 audit adjustments. Thus, on March 27, 1998, an additional $159,207 in income taxes, a fraud penalty of $191,939,

and an accuracy penalty of $1,136 were assessed. These assessments were made to a separate Non-Master File ("NMF") account solely under plaintiff's name ("NMF 1").

Mrs. Greene's request for Innocent Spouse Relief from the joint tax assessment was thereafter granted. Because the original return was filed jointly, and the deadline to change the filing status to "Married Filing Separate" had passed, the tax from the JMF account was transferred to an individual NMF account whose balance due was the sole responsibility of plaintiff. This second NMF account ("NMF 2") was distinct from the first one. On June 4, 2005, the tax liabilities, penalties, interest, and payments for NMF 2 were transferred to an Individual Master File Separate Assessment account.

On September 1, 2005, plaintiff was convicted of evasion of the payment of taxes and subscribing to a false tax declaration in the United States District Court for the Northern District of Oklahoma. See United States v. Greene, No. 04-cr-209. The district court entered a judgment against plaintiff on March 7, 2006, sentencing him to 70 months of imprisonment, and imposing a $500,000 fine.

Three days later, on March 10, 2006, the fine was entered into the United States Department of Justice's ("Department of Justice") computerized debt collection system, TALON. On April 3, 2006, a Notice of Intent to Offset was generated by the United States Attorney's Office via TALON. Six years later, on September 13, 2012, plaintiff settled a tax refund suit that was distinct from the criminal action. As part of that settlement, he received a $437,423.50 tax refund for the 1995 tax year. The government then carried out an offset, applying the $437,423.50 tax refund toward the $500,000 fine previously assessed against plaintiff.

Of the $437,423.50 that was used to offset part of the fine, $170,124 was applied against the tax liabilities, penalties, and interest for NMF 2, rendering it paid in full. However, as of April 4, 2014, NMF 1 had an outstanding balance of $761,101.46.

## II. PROCEDURAL HISTORY

Plaintiff filed suit on February 12, 2014, in the United States Court of Federal Claims ("Court of Federal Claims"). Plaintiff has filed three motions. The first is a motion to stay proceedings pending resolution of Greene v. United States, No. 08-cv-021, in the United States District Court for the District of Arizona. Plaintiff's second motion is to compel discovery. Finally, plaintiff's third motion is for summary judgment pursuant to RCFC 56. Defendant has opposed all three motions and filed a cross-motion for summary judgment. The motions have been fully briefed, and the court deems oral argument unnecessary.

## III. LEGAL STANDARDS

### A. RCFC 56

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. RCFC 56(a); Celotex Corp. v. Catrett,

477 U.S. 317, 322 (1986). A fact is material if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). An issue is genuine if it "may reasonably be resolved in favor of either party." Id. at 250.

The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact. Celotex Corp., 477 U.S. at 323. The nonmoving party then bears the burden of showing that there are genuine issues of material fact for trial. Id. at 324. Both parties may carry their burden by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." RCFC 56(c)(1).

The court must view the inferences to be drawn from the underlying facts in the light most favorable to the nonmoving party. Matsushita Elec. Ind. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). However, the court must not weigh the evidence or make findings of fact. See Anderson, 477 U.S. at 249 ("[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."); Contessa Food Prods., Inc. v. Conagra, Inc., 282 F.3d 1370, 1376 (Fed. Cir. 2002) ("On summary judgment, the question is not the 'weight' of the evidence, but instead the presence of a genuine issue of material fact . . . ."), abrogated on other grounds by Egyptian Goddess, Inc. v. Swisa, Inc., 543 F.3d 665 (Fed. Cir. 2008) (en banc); Ford Motor Co. v. United States, 157 F.3d 849, 854 (Fed. Cir. 1998) ("Due to the nature of the proceeding, courts do not make findings of fact on summary judgment."); Mansfield v. United States, 71 Fed. Cl. 687, 693 (2006) ("[T]he Court may neither make credibility determinations nor weigh the evidence and seek to determine the truth of the matter. Further, summary judgment is inappropriate if the factual record is insufficient to allow the Court to determine the salient legal issues."). Entry of summary judgment is mandated against a party who fails to establish "an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322. However, if neither party meets this burden on the filing of cross-motions for summary judgment, then the court must deny both motions. See, e.g., Canal 66 P'ship v. United States, 87 Fed. Cl. 722, 723 (2009); Dick Pac./GHEMM, JV v. United States, 87 Fed. Cl. 113, 126 (2009).

### B. Tucker Act

The ability of the Court of Federal Claims to entertain suits against the United States is limited. "The United States, as sovereign, is immune from suit save as it consents to be sued." United States v. Sherwood, 312 U.S. 584, 586 (1941). A waiver of immunity "cannot be implied but must be unequivocally expressed." United States v. King, 395 U.S. 1, 4 (1969). The Tucker Act, the principal statute governing the jurisdiction of this court, waives sovereign immunity for claims against the United States not sounding in tort that are founded upon the Constitution, a federal statute or regulation, or an express or implied contract with the United States. 28 U.S.C. § 1491 (2012). However, the Tucker Act is merely a jurisdictional statute and "does not create any substantive right enforceable against the United States for money damages." United States

v. Testan, 424 U.S. 392, 398 (1976). Instead, the substantive right must appear in another source of law, such as a "money-mandating constitutional provision, statute or regulation that has been violated, or an express or implied contract with the United States." Loveladies Harbor, Inc. v. United States, 27 F.3d 1545, 1554 (Fed. Cir. 1994) (en banc).

## C. Illegal Exaction Claims Based on Offsets Pursuant to 31 U.S.C. § 3720A

The United States Court of Appeals for the Federal Circuit has explained that an illegal exaction "involves money that was 'improperly paid, exacted, or taken from the claimant in contravention of the Constitution, a statute, or a regulation.'" Norman v. United States 429 F.3d 1081, 1095 (Fed. Cir. 2005) (quoting Eastport S.S. Corp. v. United States, 372 F.2d 1002, 1007 (Ct. Cl. 1967)); see also Figueroa v. United States, 66 Fed. Cl. 139, 146 (2005) (defining illegal exaction claims as "those where the claimant seeks the return of all or part of a sum of money he has been improperly required to pay by the Government in contravention of the Constitution, a statute, or a regulation"), aff'd, 466 F.3d 1023 (Fed. Cir. 2006). While "[t]he prototypical illegal exaction claim is 'a tax refund suit alleging that taxes have been improperly collected or withheld by the government,'" Kipple v. United States, 102 Fed. Cl. 773, 777 (2012) (quoting Norman, 429 F.3d at 1095), a plaintiff may allege an illegal exaction claim that is not a tax refund. As set forth in 26 U.S.C. § 6402(g), "[n]o action brought against the United States to recover the amount of any such reduction [of a tax refund by an offset] shall be considered to be a suit for a refund of tax."

Offsets are described in 31 U.S.C. § 3720A. Under § 3720A(a), "[a]ny Federal agency that is owed by a person a past-due, legally enforceable debt . . . shall . . . notify the Secretary of the [United States Department of the] Treasury [("Department of the Treasury")] at least once each year of the amount of such debt." Subsequently, the Secretary "shall determine whether any amounts, as refunds of Federal taxes paid, are payable to such person. If the Secretary of the Treasury finds that any such amount is payable, he shall reduce such refunds by an amount equal to the amount of such debt [and] pay the amount of such reduction to such agency . . . ." 31 U.S.C. § 3720A(c). However,

> [n]o Federal agency may take [such] action . . . until such agency--
>
> (1) notifies the person incurring such debt that such agency proposes to take [such] action . . . ;
>
> (2) gives such person at least 60 days to present evidence that all or part of such debt is not past-due or not legally enforceable;
>
> (3) considers any evidence presented by such person and determines that an amount of such debt is past due and legally enforceable;
>
> (4) satisfies such other conditions as the Secretary may prescribe to ensure that the determination made . . . with respect to such debt is valid and that the agency has made reasonable efforts (determined on a government-wide basis) to obtain payment of such debt; and

4

> (5) certifies that reasonable efforts have been made by the agency . . . to obtain payment of such debt.

Id. § 3720A(b).

The Court of Federal Claims possesses jurisdiction over an illegal exaction claim based on an offset pursuant to 31 U.S.C. § 3720A. In order to invoke Tucker Act jurisdiction over an illegal exaction claim, "a claimant must demonstrate that the statute or provision causing the exaction itself provides, either expressly or by 'necessary implication,' that 'the remedy for its violation entails a return of money unlawfully exacted.'" Norman, 429 F.3d at 1095 (quoting Cyprus Amax Coal Co. v. United States, 205 F.3d 1369, 1373 (Fed. Cir. 2000)). With respect to offsets, 31 U.S.C. § 3720A "necessarily impl[ies] a monetary remedy if the Government perpetrates an illegal exaction pursuant to [its] authority [because] . . . absent a monetary remedy, a litigant has no recourse to recover wages unlawfully garnished or income tax refunds unlawfully offset." Wagstaff v. United States, 105 Fed. Cl. 99, 111 (2012). Thus, this court retains jurisdiction over illegal exaction claims based on an offset. Kipple, 102 Fed. Cl. at 777 (holding that the court has jurisdiction over an illegal exaction based on an offset pursuant to 31 U.S.C. § 3720A because "[t]he remedy would be a return of the money."). Further, whereas a plaintiff cannot invoke this court's jurisdiction over a tax refund claim until the plaintiff has fully paid the taxes for the disputed period, Flora v. United States, 362 U.S. 63, 75 (1960), a plaintiff who alleges an illegal exaction claim based on an offset need not have fully paid the tax liability for this court to have jurisdiction, Ibrahim v. United States, 112 Fed. Cl. 333, 336 (2013).

## IV. DISCUSSION

In his complaint, plaintiff notes that the IRS offset his federal income tax overpayment of $437,423.50 for the 1995 tax year against a criminal fine assessed for the 1990 tax year. Plaintiff alleges that when the IRS carried out the offset, it failed to follow the procedural requirements set forth in 31 U.S.C. § 3720A. Specifically, plaintiff asserts, the IRS failed: to notify him of the proposed offset; to allow him sixty days to present evidence that that all or part of the fine was not past due; to certify the debt; and to make a reasonable effort to obtain payment of any debt. Thus, plaintiff claims, the offset was an illegal exaction, and he seeks judgment in the amount of $437,423.50 plus interest.

### A. Plaintiff's Motion to Stay Proceedings

Plaintiff filed a separate, unrelated suit in the United States District Court for the District of Arizona alleging that he is entitled to a refund of a portion of the 1995 tax overpayment, which the IRS applied as an offset against NMF 2 as part of his 1990 tax liability. In his motion to stay proceedings before this court, plaintiff argues that because the district court litigation is ongoing, and the court will determine "if a tax liability . . . exists" for the 1990 tax year, this case should be stayed pending that determination. Pl.'s Mot. to Stay 1. Defendant responds by contending that no stay is warranted because the issue of plaintiff's 1990 tax liability is not before this court and does not implicate these proceedings.

Defendant is correct. When resolving defendant's motion to dismiss for lack of subject matter jurisdiction, the district court determined that NMF 1 and NMF 2 were "sufficiently separate assessments for jurisdictional purposes." Pl.'s Notice, Docket No. 16, Ex. 1 at 8. The court reasoned that because the tax liability "tracked in" NMF 1 had an unpaid balance of $761,101.46, the court lacked jurisdiction to review plaintiff's tax refund claim as to that account. Id. at 2. The court cited Flora, in which the United States Supreme Court held that there is "no room for contention" of the "principle" that taxpayers must "pay first and litigate later." 357 U.S. at 75. Thus, the district court found that it had no jurisdiction to review NMF 1. By contrast, the court also held that because the balance in NMF 2 was paid in full, the court had jurisdiction over plaintiff's tax refund claim concerning that account. Consequently, even if the district court ultimately finds that the offset pertaining to NMF 2 was improper, that determination would not affect NMF 1 because that court previously determined that it lacks jurisdiction to entertain a claim related to NMF 1. If plaintiff were to prevail in the district court with respect to NMF 2, the $761,101.46 outstanding balance in NMF 1 would remain an outstanding debt owed to the Department of the Treasury. Moreover, this court's review is limited to determining whether the offset that already occurred was an illegal exaction, a determination that is not affected by plaintiff's 1990 tax liability. Thus, this court's finding as to whether the offset was proper would not be impacted by the district court's conclusions regarding NMF 2 or any findings concerning plaintiff's 1990 tax liability. Accordingly, there is no basis to stay this case pending the outcome of the district court litigation, and plaintiff's motion is denied.

### B. Plaintiff's Motion to Compel Discovery

Plaintiff has also filed a motion to compel discovery. Specifically, plaintiff seeks to "compel the deposition of the IRS representative regarding the true and correct amount of 1990 tax liability, if any . . . ." Pl.'s Mot. to Compel 2. In response, defendant argues that this court lacks jurisdiction to review the underlying merit of plaintiff's 1990 tax liability. Further, defendant contends, the deposition that plaintiff seeks is beyond the scope of discovery permitted by RCFC 26 because it seeks information that is neither relevant to the issues in this case nor reasonably calculated to lead to the discovery of admissible evidence.

The court finds that plaintiff has no basis to seek such discovery in this case. Plaintiff does not advance a tax refund claim here, but, rather, brings an illegal exaction claim, arguing that statutory procedural requirements were not satisfied when the IRS carried out an offset. Thus, examining the proper amount of plaintiff's tax liability has no bearing on whether the offset that occurred constitutes an illegal exaction. Seeking the deposition of an IRS representative regarding the merits of plaintiff's 1990 tax liability is not "relevant" to either "party's claim or defense," as RCFC 26(b)(1) requires of discovery requests. There is no indication that plaintiff's discovery request is "relevant to the subject matter involved in the pending action," or that it is "reasonably calculated to lead to the discovery of admissible evidence."[1] Id. Ultimately, defendant's "offer to produce a witness for deposition who can

---

[1] On December 1, 2015, the Federal Rules of Civil Procedure ("FRCP") were amended. Revised FRCP 26(b)(1) now provides:

6

explain the IRS records that establish the existence of the unpaid 1990 assessment," which plaintiff has not yet accepted, more than sufficiently accommodates plaintiff's request. Def.'s Response to Pl.'s Mot. to Compel 6. Moreover, to permit the discovery that plaintiff seeks would be improper in light of this court's lack of jurisdiction. Even if plaintiff was requesting a tax refund, the court would not have jurisdiction to entertain that request because his tax liability has not been fully paid. As mentioned earlier, it is well settled that this court possesses jurisdiction over a tax refund claim only if a plaintiff has fully paid the tax liabilities or penalties challenged. Flora, 357 U.S. at 75.

Finally, plaintiff's 1995 tax overpayment was applied to offset a fine levied in a criminal proceeding. To the extent that plaintiff challenges the validity of the Oklahoma district court's determination of his 1990 tax liability and resultant fine in United States v. Greene, No. 04-cr-209, this court lacks jurisdiction to undertake any such review. "[T]he Court of Federal Claims does not have jurisdiction to review the decisions of district courts . . . ." Joshua v. United States, 17 F.3d 378, 380 (Fed. Cir. 1994). Accordingly, plaintiff's motion to compel discovery is denied.

### C. The Parties' Cross-Motions for Summary Judgment

In his motion for summary judgment, plaintiff contends that when the IRS offset his 1995 tax overpayment of $437,423.50 against the criminal fine assessed for the 1990 tax year, the IRS failed to follow certain procedural requirements required by 31 U.S.C. § 3720A. Plaintiff argues that the IRS did not provide him with notice of the proposed offset before or after it was carried out. Further, plaintiff asserts that he was not past due on his fine payments. He contends that the IRS did not give him 60 days to present evidence to that effect, denying him an "opportunity to be heard as to whether the fine was past-due and if it was a legally enforceable debt." Pl.'s Mot. for Summ. J. 5. Plaintiff also asserts that the IRS failed to provide a certification that the debt was past due. According to plaintiff, the offset was therefore an illegal exaction, and he requests the return of those funds.

Defendant argues in its cross-motion that it did provide plaintiff with notice of the offset before it occurred. In addition, defendant contends, plaintiff also received notice after the offset

---

Scope in General. Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

The Court of Federal Claims' local rules have not yet been revised to conform with newly amended FRCP 26(b)(1). The divergence in text, however, poses no issue in this case because plaintiff's claim lacks merit and discovery would be futile.

occurred by electronic-mail message from the Department of Justice attorney assigned to his 1995 refund case.

Further, defendant asserts, plaintiff's debt was certified. Defendant argues that plaintiff's criminal fine was referred to the Treasury Offset Program ("TOP") in 2006. Under that program, defendant notes, payments that are made by the Treasury, including tax refunds issued by the IRS, are offset against outstanding debts due to the United States. Defendant contends that after plaintiff's fine was referred to the TOP, the debt was certified annually by the U.S. Attorney's Office.

Defendant also notes that the judgment imposing the criminal fine provided that it was due in full immediately, and that if it was not paid immediately, it was payable on a schedule. The judgment set forth that notwithstanding the schedule, nothing could prohibit the government from executing or levying upon plaintiff's property discovered before or after the judgment, defendant explains. Defendant thus argues that even if plaintiff could establish that he complied with the payment schedule, which he has not, entry of the judgment against his property allowed the government to seize such property to obtain payment of the fine.

Finally, defendant contends that even if the government erred in its compliance with the statutory requirements that plaintiff identifies, because such purported errors were procedural in nature, a return of the offset funds is not the proper remedy—and even if a monetary judgment was entered, the government would be required under 31 U.S.C. § 3728, a different statute, to offset that judgment against plaintiff's criminal fine, making entry of the judgment futile.

Defendant's arguments are correct. The court first turns to plaintiff's argument that he did not receive notice of the offset. As described earlier, 31 U.S.C. § 3720A requires that if an individual owes a legally enforceable debt to a federal agency that is past due, the Secretary of the Treasury may offset the individual's tax refund against the debt, but must provide notice sixty days prior to the offset. Here, plaintiff's criminal fine was entered into TALON, the computerized debt collection system of the Department of Justice's Financial Litigation Unit ("FLU"). Pursuant to the FLU's standard procedure, plaintiff's address was also entered into the system. Decl. of Libbi L. Felty ("Felty Decl.") ¶ 5. On April 3, 2006, Libbi L. Felty, a Paralegal Specialist at the FLU, entered a "Treasury Offset Program Notice" event into TALON, which caused a notice to be generated and mailed to plaintiff. Id. ¶ 6. The April 3, 2006 notice informed plaintiff that his outstanding debt was referred by the Department of Justice for inclusion in the TOP. Id. The TALON system was later converted to the Consolidated Debt Collection System ("CDCS"). Defendant provides electronic records from CDCS that indicate that plaintiff's $500,000 fine was entered into the system. See id., Ex. A at 6. These records, as well as a CDCS report generated by the Debt Collection Management Staff of the Department of Justice regarding the collection of plaintiff's criminal fine, indicate that on April 3, 2006, "[a]n event for [the] TOP 60 Notice Letter [was] Created." See Decl. of Jennifer D. Auchterlonie ("Auchterlonie Decl."), Ex. B at 13. Although defendant does not possess a copy of the notice letter that it contends was mailed to plaintiff, it provides a copy of the standard form "Notice of Intent to Offset" that the Department of Justice sends when undertaking an offset. Id. at 26.

It appears that defendant's computer system did indeed generate the standard notice of intent to offset, as indicated by the record of the event in the system, and that the notice was subsequently sent to the address on file for plaintiff. "The likelihood of actual receipt . . . is not the relevant standard" to determine whether defendant met the notice requirement. Kipple v. United States, 105 Fed. Cl. 651, 656 (2012). Rather, "[b]y sending a notification letter to plaintiff at his address on file, the [government] satisfied the notice requirements. Relevant regulations provide that notification or a "reasonable attempt to notify should be sent to the taxpayer," and such attempts include sending a letter to an address on file with the IRS. Id.; see 26 C.F.R. § 301.6402-6(d)(1) (2000) (stating that sending a notice to the last address that the IRS has on file would be reasonable); 31 C.F.R. § 285.2(d)(2)(i) (2000) (providing that relying on the address currently on file with the agency is reasonable). Further, the notice was sent on April 3, 2006, more than sixty days before the September 13, 2012 offset. Thus, the IRS satisfied the sixty-day notice requirement set forth in 31 U.S.C. § 3720A.

In addition, plaintiff's arguments that his criminal fine was not past due, and that it was not properly certified as a past-due debt, are incorrect. Plaintiff asserts that he timely made his payments, but does not provide any documentation or other evidence thereof. Further, the judgment imposing the fine provided that it was "due in full immediately," and that if it was not paid immediately, it was "payable on a schedule" described therein. Auchterlonie Decl., Ex. A at 8. Thus, because the fine was not paid immediately, it was past due. More saliently, whether plaintiff's criminal fine was past due is ultimately inconsequential here. The judgment stated that "[n]otwithstanding establishing of a payment schedule, nothing shall prohibit the United States from executing or levying upon property of the defendant discovered before or after the date of this Judgment." Id. Indeed, 18 U.S.C. § 3613(a) provides that "a judgment imposing a fine may be enforced against all property or rights to property of the person fined . . . [,]" except in certain circumstances that do not apply here. Thus, the establishment of a payment schedule does not preclude the government from undertaking collection activity, such as referral of a debt to the TOP for offset. See United States v. James, 312 F. Supp.2d 802, 806-07 (E.D. Va. 2004); United States v. Weissenbach, No. 08-cr-172-1, 2010 WL 2246177, at *2 (W.D.N.C. June 2, 2010). The payment schedule is merely one of several means by which the government may obtain payment of a judgment. James, 312 F. Supp. 2d at 806-07; United States v. Hanhardt, 353 F. Supp. 2d 957, 960 (N.D. Ill. 2004). Thus, because plaintiff's fine was not paid immediately, it was considered past due, and notwithstanding that status, his property, including tax refunds, was subject to being used to offset the fine.

Further, the electronic records that defendant provides indicate that the fine was certified annually by the United States Attorney's Office. Specifically, the fine was recertified on: March 16, December 7, and December 18, 2007; December 18, 2008; and April 8, 2009. Auchterlonie Decl., Ex. B at 13. In addition, the criminal debt was certified by the Clerk of the United States District Court for the Northern District of Oklahoma on December 1, 2011. Felty Decl., Ex. B at 10. The certification provided that plaintiff's debt was "valid and legally enforceable." Consequently, plaintiff's criminal fine was properly certified.

The court next turns to plaintiff's contention that he did not receive notice of the offset after it was carried out. Under 31 U.S.C. § 3720A(h)(1)(A), "[t]he disbursing official of the Department of the Treasury shall notify a taxpayer in writing of the occurrence of an offset to

satisfy a past-due legally enforceable nontax debt." Plaintiff received such written notice. In his response to defendant's interrogatories during discovery, plaintiff stated that he received notice of the September 13, 2012 offset almost one month later, on October 9, 2012. Auchterlonie Decl., Ex. B at 29. Specifically, plaintiff represented that Anne E. Nelson, the attorney assigned to his tax refund case for the 1995 tax year, informed him of the offset by electronic-mail message on that date. Id. at 29-30. Further, plaintiff admits the same in his motion. Pl.'s Mot. Summ. J. 3. He also indicates that he called the Financial Management Service at the Department of the Treasury on October 11, 2012, and was informed that his tax refund "had been released to FLU." Id. Thus, plaintiff received written notice after the offset, in accordance with the statutory requirement thereof.

Finally, even if the court were to find that the IRS failed to comply with the notice requirements outlined above, the remedy for any such error would not be a return of the offset funds to plaintiff. The notice requirements are "bereft of any indication that a payee subject to the Treasury Offset Program may obtain money damages from the government if the notice given the payee is deficient." Wilburn v. United States, 103 Fed. Cl. 495, 499 (2011). "[T]here is no reasonable basis for inferring that the alleged failure of [Financial Management Service at the Department of the Treasury] to meet all the specifics of the notice requirements . . . entitles a plaintiff to an award of monetary damages for their violation." Id. Moreover, if the court were to determine that plaintiff was entitled to a return of the offset funds and entered a monetary judgment against defendant, the government would then be required to apply that judgment toward his criminal fine. See 31 U.S.C. § 3728 (stating that the "Secretary of the Treasury shall withhold paying that part of a judgment against the United States Government . . . that is equal to a debt the plaintiff owes the Government," and that the "[t]he Secretary shall discharge the debt if the plaintiff agrees to the setoff and discharges a part of the judgment equal to the debt; or withhold payment of an additional amount the Secretary decides will cover legal costs of bringing a civil action for the debt if the plaintiff denies the debt or does not agree to the setoff[] and have a civil action brought if one has not already been brought."). Thus, granting plaintiff the relief that he requests here would be futile because the funds would then be offset against his fine, by virtue of a separate statute. Consequently, plaintiff's motion for summary judgment is denied, and defendant's cross-motion is granted.

### V. CONCLUSION

For the reasons set forth above, the court **DENIES** plaintiff's motion to stay proceedings, **DENIES** plaintiff's motion to compel discovery, **DENIES** plaintiff's motion for summary judgment, and **GRANTS** defendant's cross-motion for summary judgment. Plaintiff's complaint is **DISMISSED**. No costs. The clerk is directed to enter judgment accordingly.

**IT IS SO ORDERED.**

MARGARET M. SWEENEY
Judge